## J. C. WELLS, ADM'R, &c., v. T. M. POLK AND OTHERS.

In December, 1854, W. and M., as joint administrators of an estate, peti-tioned the probate court for an order to sell "any land and as much "land" of the estate as would suffice to pay the debts of the estate.   At the ensuing term the probate court made the order of sale in similar general words, without designating any tracts or quantity.   Under this order, and on sale day of March, 1855, the land now in controversy was sold by the administrators, and was bid off by one P.   At the March term, 1855, the probate court confirmed the sales and ordered deeds, etc.; and on June 15th, 1855, the administrators made their deed to P., and it was filed for record on the following 21st of August.   On the same 21st of August, 1855, was also filed for record a deed from P., bearing date the day previous, and conveying the land to M., who was one of the admin-istrators.   In 1857, judgment was rendered against M., and under it the land was sold as his property, and by mesne conveyances was subsequently transferred to the defendants in error for value paid.   In 1860, the pro-bate court, besides allowing M. to resign as administrator, made an order purporting in effect to permit him to surrender the land to the estate, and purporting to cancel the sale to P., and to revest in the estate the ownership of the land.   In 1867, W., the remaining administrator, sued for the land as the property of the estate.   Held, that although the order of sale was irregular, inasmuch as it did not describe the property to be sold (Paschal's Digest, Article 1321), yet it was not void, and its validity cannot be impeached collaterally, as attempted in this suit.

2.  Though, at an administrator's sale, land was bid off for the administra-tor by a nominal purchaser, who after confirmation of the sale received conveyance from the administrator, and subsequently conveyed to the latter, in whom the title was thus placed by fraud yet subsequent pur-chasers for value are not chargeable with notice of the fraud by reason of the record of the conveyances between the administrator and the nominal purchaser.

ERROR from Navarro. Tried below before the Hon. F. P. Wood.

The principal features of the case are clearly denoted by the opinion. The immediate purchaser at the sheriff's sale, under which the defendants in error deraigned title, was the plaintiff in execution himself, and his bid was paid by credit on his execution; but the sheriff's deed to him recited a cash consideration in the usual form.

*C. M. Winkler*, for the plaintiff in error. It is apparent from the record that, at the time of the alleged sale to Pillow, and by Pillow to W. H. Mitchell, he, the said W. H. Mitchell, was one of the administrators of D. R. Mitchell, J. C. Wells, the appellant, being his co-administrator; and that the two, W. H. Mitchell and J. C. Wells, continued to be recognized as administrators until May, 1860, when W. H. Mitchell was discharged from the administration, and J. C. Wells ordered to continue it alone.

The order of sale was a nullity, because it did not describe the property to be sold. (Paschal's Digest, Article 1321.) This is a positive requirement of the statute—an order thus defective confers no power to sell—is upon the record of the court, and is notice to all purchasers. I extract from a leading standard authority:

"It is a well established principle, that whatever is notice "enough to excite attention, and put a party on his guard, "and call for inquiry, is also notice of everything to which "it is afterwards found that such inquiry might have led, al-"though all was unknown for want of the investigation; that "is, when he has sufficient information to lead him to a fact, "he shall be deemed cognizant of it.

"A purchaser—and a mortgagee is a purchaser *pro tanto*— "who has actual notice of one instrument affecting the estate, "has constructive notice of all other instruments to which an "examination of the first could have led him, and if he "does not examine into them, his conduct amounts to that de-

" gree of negligence which will charge him with all the con-
" sequences of notice.

"In all cases where a person cannot make out a title but by
" a deed which leads to another fact, whether by description of
" the parties, recital, or otherwise, he will be deemed cognizant
" of it, for it was *crassa negligentia* that he sought not after it;
"and, for the same reason, if a purchaser has notice of a deed,
"he is presumed to have notice of the whole contents of it."

(See Spence on Equity Jurisdiction of the Court of Chancery,
Vol. II., p. 757 *et seq.*, and numerous authorities there referred
to; see also Paschal's Digest, Note 1092.)

The two administrators sold the land to Pillow, and Pillow
soon after reconveyed to one of them. Let us examine for a
moment the circumstances of this sale. These administrators
were ordered to sell any land, or so much land, as would be suf-
ficient to pay the debts of D. R. Mitchell's estate. A sale of a
large amount of lands purports to have been made under this
order, on the first Tuesday in March, 1855. At the March
term, 1855, the sale was confirmed. The report of the sale
is sworn to by W. H. Mitchell. The deed to Pillow was filed
for record on the 21st, and recorded on the 25th day of August,
1855. The deed from Pillow to W. H. Mitchell was filed for
record on the same day, and recorded on the same day as
the deed from the administrators to Pillow.

The sale was ordered on twelve months' credit—so recited
in the order of sale, in the report of sale, in the confirma-
tory order, and in the administrator's deed to Pillow; and
long before the expiration of that time the property was recon-
veyed by the purchaser to one of the administrators, by deed,
duly recorded in the proper county.

All these facts existed, and were shown by the records,
long prior to the rendition of the judgment against W. H.
Mitchell, and the sheriff's sale, under which the appellees
claim title. The judgment against W. H. Mitchell was rendered
in April, 1857; the sale by the sheriff was made in January,
1858, the judgment creditor being the purchaser, who paid

the amount of his bid by crediting it ·on the execution in his favor, but not in money.

From this statement of the facts, all of which is fully sustained by the record here in court, there can be no doubt that Pillow never paid the purchase-money, and that Mitchell never paid anything to Pillow for the land; the legal effect of this sale by the administrators to Pillow, and the reconveyance by Pillow back to one of the administrators, was, it seems to my mind, clear and incontestable, to reinvest the estate and heirs of D. R. Mitchell with the title to the land in controversy. It will be borne in mind that the legal title never vested in the administrators: that on the death of D. R. Mitchell his estate passed *eo instanti* to, and vested in, his heirs; his administrators had a limited control, and, under certain conditions, limitations, and restrictions, and in certain specified ways, by the aid of the proper court, could pass title; but they, nor either of them, could, even by the aid of the court, so manage by any manner of means as to vest the title in themselves, either directly, by selling to themselves, or by taking it at its appraised value, or indirectly, as, for instance, by deeding it to another, and procuring it to be reconveyed to themselves, or either of them. (Article 1328.) This article indicates the two instances, and there are but two, when an administrator can sell at all; one is, by testamentary direction; the other, by order of the county court, under the provisions of law; but in no case can he become the purchaser, and for obvious reasons; hence, I contend, that W. H. Mitchell, one of the administrators of D. R. Mitchell, acquired no title by virtue of the sale to Pillow, and from Pillow to himself, or, at any rate, that whatever title he so acquired, he held in trust for the estate he represented; and if the court should hold that the action of the court is necessary in order to declare such purchase void, then, I insist, this action of the court was as effectually had, by the voluntary surrender by the administrator, as if he had been regularly cited. These facts appeared by the record: first, that Wm. H. Mitchell, one of the administrators of D. R. Mitchell, had

indirectly become the purchaser of property belonging to the estate he represented as such administrator, and that the title was liable to be attacked at any time by any person interested in the estate, and to be declared void; yet, with all these facts, the appellees, and those under whom they claim, down to the purchaser at sheriff's sale, claim they have acquired a valid title to the land, purchased by them under all these surroundings. What title did Van Hook acquire by virtue of his deed from Walton, the sheriff? Certainly only such title as the execution debtor had; he could not claim to be an innocent purchaser, for the reason that he had not paid the purchase-money, but simply credited the amount of his bid on the execution for his debt. Could Van Hook convey a better title than he possessed at the time of purchase by himself and the sale to his vendee? Certainly not; and what sort of title is it the appellees so earnestly invoke the court to protect? The title of an administrator who had indirectly, and in violation of law, purchased property belonging to the estate he represented, which was liable any time to be declared void, and of which they had abundant notice, by the record of the very proceedings under which they claim to hold.

It is contended by the appellees, that, inasmuch as the administrators of D. R. Mitchell asked for authority to sell lands at their discretion, then the order so granting the sale, and confirming it, cured all defects; could the court by a confirmatory order cure the defects of an order of the court which the law did not authorize?

In this respect the difficulty is not so much in the orders of the court, unauthorized as I hold them to be, as in the fact that the administrator became, as it is evident, a purchaser at his own sale. But it is contended that W. H. Mitchell bought the land of Pillow for a valuable consideration acknowledged in the deed. Now, suppose this were true, which is not admitted, does this change the fact of his relationship to the estate? But this is not all; the circumstances are well calculated to negative the idea, if they do not show conclusively that Pillow never paid a

cent of the purchase-money. It is fair to presume, that if he had done so, the fact would have been shown by some exhibit of the administrators of D. R. Mitchell, and if such had been the case, so important a feature would not have been overlooked by the appellees on the trial below. The circumstantial evidence negatives the idea that Pillow ever paid the administrators anything, or that W. H. Mitchell paid any consideration to Pillow. The sequel sustains this view of the case, in that W. H. Mitchell, whatever may have been his motives in first procuring the land to be conveyed to himself, when he was, long afterwards, preparing to withdraw from the administration, and turn it over to Wells, he surrendered not only the land in controversy, but other lands in precisely the same condition, back to the estate of D. R. Mitchell, where, as he well knew, it rightfully belonged.

It is further urged by appellees, that " the administrators " will not be heard here, alleging his own wrong as a ground " for relief." Now, when we come to examine the statement and petition for the sale, whilst it is signed by an attorney purporting to act for both administrators, we find that the affidavit was made by W. H. Mitchell, which is calculated to create the impression that he alone, and not he and Wells, was the prime actor in the whole matter.

It is J. C. Wells, and not W. H. Mitchell, who institutes this suit. Let us suppose, that when Wells came to look into this little matter between Pillow and W. H. Mitchell, he found that the estate had never been benefited by the pretended sale of these lands, and that no part of the money had been paid by Pillow or Mitchell, what then would have been his duty ? To acquiesce in this great wrong? or to seek, by all means, to secure the property to the heirs of the estate he represented, or to the creditors, if any there were ? It will not be denied that the county court is of limited jurisdiction, an inferior tribunal, and could only act as the law of its creation gave it jurisdiction. The positions I have taken are, so far as the law is concerned, fully sustained by our own decisions, and especially the case of

Withers v. Patterson, 27 Texas, now likely to become a leading authority as to what a court has jurisdiction to do, as well as to the distinctions between voidable and void judgments; and on this subject I refer to two cases in Douglass, Mich. Reports, Vol. I., Wright v. Warner, p. 384, and Clark v. Holmes, p. 390. In the latter case Mr. Justice Goodwin, who delivered the opinion, after a thorough investigation, deduces several principles, which apply very favorably to this case on the side of the appellant.

We hold that if Mitchell's administrators sold the land to Pillow, and Pillow reconveyed to one of them, intending thereby to evade the law which prevents an administrator from purchasing property belonging to the estate he represents, then both the seller and the buyer attempted the perpetration of a fraud upon the heirs and creditors of D. R. Mitchell, deceased, which calls for redress at the hands of the court, not for the benefit of the administrators, but for the benefit of the heirs and creditors of the estate, who are not parties to the fraud, and are not to be held answerable for the wrongful acts of their agents, to whom the law has given control of the property for a particular purpose and with limited powers. These parties are bound by the records, and whether they examined them or not is no fault of the present administrators.

*J. L. Halbert* and *R. Q. Mills*, for the defendants in error.

WALKER, J. D. R. Mitchell died in 1853, leaving a large estate in lands, the title to eleven hundred acres of which is herein questioned. Wells and W. H. Mitchell administered on the estate of D. R. Mitchell. The estate was involved in debt, and the administrators applied to the probate court for a general order to sell the lands belonging to the estate to pay the debts. There was no specific description of the lands contained in the order. In pursuance of the order the lands in controversy were sold, and purchased by William B. Pillow. Sometime after the sale, Pillow conveyed this land to W. H. Mitchell, one of the administrators, who

afterward became indebted to Solomon Van Hook, who caused the land to be sold upon execution against Mitchell. The land was purchased by A. Barry, who sold the land to the defendants.

After the sale Mitchell went before the probate court, and procured an order setting aside the administrator's sale, with a view to revest the title in the estate of D. R. Mitchell. Upon this order and supposed irregularity of the order for sale, in that it did not designate what particular lands belonging to the estate of D. R. Mitchell were to be sold by the administrators, the appellant predicates his right to recover in this action.

Though there may have been irregularity in the order of the probate court, it was not such as to render the proceeding absolutely void, and it cannot therefore be collaterally impeached. The probate court had jurisdiction to order the sale of the land, and though the order may not have been made in the precise manner pointed out by the statute, it was not void.

Admitting that the sale to Pillow was intended to inure to the benefit of W. H. Mitchell, and that in this way he fraudulently obtained title to the land, subsequent *bona fide* purchasers without notice could not be affected by the fraud. We are therefore of opinion that the appellees, claiming under the sheriff's deed, it not being shown that they are affected by notice in any manner of the fraud, obtained a good title.

The judgment of the District Court is therefore affirmed.

Affirmed.