J. A. DAVIS *v.* JANE TOUCHSTONE ET EL.

1. ADMINISTRATION—SALE.—The fact that a sale of land belonging to an estate was ordered, on the petition of the administrator, to enforce a lien thereon, under the probate law of 1848, does not affect the title of the purchaser.

2. ADMINISTRATOR'S SALE—LAND.—The provision of the statute requiring the order for the sale of property of an estate, to describe the property, like the provision requiring the application of the administrator to be accompanied by an estimate of expenses and claims, and to be verified by affidavit, must be regarded as directory.

3. ADMINISTRATION—PURCHASER.—After confirmation of an administrator's sale to one purchaser, it is competent for the court to change the order, and confirm the sale in the name of a different purchaser, with the consent of him to whom the sale was first confirmed. In the absence of evidence to the contrary, such consent will be presumed.

4. DESCRIPTION, CERTAINTY OF.—See case of a description of land in a deed by an administrator, held sufficient.

APPEAL from Milam. Tried below before the Hon. J. M. Onins.

Suit by J. A. Davis, alleging, in substance, that he sold to James Touchstone three hundred and twenty acres of land, in Milam county, a part of the headright of Leander Harl, and on which Touchstone resided at the time of his death; that Touchstone failed to pay the purchase-money, and that after his death, William C. Easterwood, as his administrator, accepted the claim against the estate for the purchase-money, which was approved by the county judge of Milam county; that on the 27th day of February, 1868, an order was made by the Probate Court of Milam county, requiring William C. Easterwood, as administrator, to sell the land to satisfy the vendor's lean; that on the first Tuesday in June, 1868, Easterwood, in obedience to the order, sold, when W. H. Davis, as agent for petitioner, J. A. Davis, purchased the land; that on the 31st day of August, 1868, the sale was confirmed, and the administrator ordered by the court to make title to J. A. Davis, which was done on the 21st December, 1868; that the heirs of said Touchstone (naming them) withhold the possession of the land, and have so held since the purchase, refusing to surrender to plaintiffs; damage $10,000. Prayer for possession and value of occupation, &c.

The plaintiff afterwards amended, setting up the proceed-

ings in the Probate Court, and alleged that by virtue of them and the sale and deed by the administrator, the heirs of Touchstone were estopped from claiming the land.

Defendants answered, setting up the purchase of the land and the payment therefor by their ancestor, in a note alleged to have been transferred to the vender, which was executed by one J. W. Jordan to James Touchstone, for lands sold in Arkansas, on which it was a lien; that said note was indorsed by Touchstone; that due diligence had not been used by plaintiff to collect said transferred note. Fraud and combination were alleged against the plaintiff and Touchstone's administrator, in approving the claim and in procuring the order of sale and confirmation thereof; that the sale was made and confirmed to H. W. Davis, and at a subsequent term of the court, title was ordered by the court to be made to J. A. Davis, concerning all which no evidence was offered, as appears from statement of facts.

On the trial the plaintiff read in evidence the deed from the administrator of Touchstone's estate to J. A. Davis, which recited the proceedings of court under which the sale was made, and that J. A. Davis "was the highest and best bidder," and conveyed to him "a part of the headright league of land granted to Leander Harle, containing three hundred and twenty acres, being the tract on which the said James Touchstone lived at the time of his death, adjoining the lands of A. H. Davis, James Aikins, and William C. Easterwood." The order appointing the administrator, the approval of his bond, and inventory of the estate, were then read.

On the trial the plaintiff offered in evidence the petition of the administrator to the Probate Court for an order to sell the land in controversy to satisfy the vendor's lien. He also offered orders in regard to the sale and the order confirming the sale, which were excluded by the court; and this was assigned as error.

The appellee offered no evidence, and the court instructed the jury to return a verdict for defendant.

*C. R. Smith,* for appellant.—Here is an order for the sale of three hundred and twenty acres of land, to foreclose the vendor's lien. *Id certum est quod certum reddi potest.* (Broone's Leg. Max., 482; Dannagan *v.* Butler, 25 Tex., 506.)

If the order was a valid one, (and it was, if the court had jurisdiction of the subject-matter,) it was, when executed and its execution confirmed by the court, binding upon all, until set aside by an appeal or by suit having that object directly in view, being a suit *in rem.* (Herman on Estop., p. 139, sec. 132, (note 1;) Lynch *v.* Baxter, 4 Tex., 443; Rorer on Judic. Sales, § 72, (note;) Scott *v.* Hancock, 13 Mass., 166; 6 Peters, 729.)

However irregular or illegal these orders may be, they cannot be attacked in this, a collateral proceeding. (Wyman *v.* Campbell, 6 Porter, 219; Lynch *v.* Baxter, 4 Tex., 448; Grignan *v.* Astor, 2 How., 319–338; Poor *v.* Boyce, 12 Tex., 440; Alexander *v.* Maverick, 18 Ib., 194; Withers *v.* Patterson, 27 Ib., 491; Burdett *v.* Silsbee, 15 Ib., 604; Flanagan *v.* Pierce, 27 Ib., 79; George *v.* Watson, 19 Ib., 354.)

*N. P. Garrett,* for appellees.—The court could grant the relief prayed for by defendants. (Blair *v.* Gay, 33 Tex., 158; Story's Eq. Plead., 389 *et seq.,* cross-bill; Paschal's Dig., art. 1405.)

The matters pleaded are necessarily connected with, and are incidental to, the main action, and can be determined in the same suit. (Egery *v.* Power, 5 Tex., 506; 6 Tex., 418; Duncan *v.* Magette, 25 Tex., 257.)

The jurisdiction of a court is the power or authority conferred upon it by the Constitution and laws to hear and determine causes between parties and to carry its judgments into effect. A court has no power to do anything which is not authorized by law. The powers of the County Courts in respect to the estates of deceased persons are all conferred by statute. Whatever a statute authorizes a court to do, it may rightfully do. (Withers *v.* Patterson, 27 Tex., 495.) The

act of 1848 to regulate the proceedings in the County Courts pertaining to estates of deceased persons (Paschal's Dig., art. 1319, Hart. Dig., 1168) provides that "any creditor of the estate of a deceased person holding a claim secured by a mortgage or other lien, which claim has been allowed and approved or established by suit, may obtain at a regular term of the court, from the chief justice of the county where the letters testamentary or of administration were granted, an order for the sale of the property upon which he has such mortgage or other lien, or so much of said property as may be required to satisfy such claim, by making his application in writing, and having a copy thereof served upon the executor or administrator, with a citation requiring him to appear and answer. (Jones *v.* Taylor, 7 Tex., 244.) Without these prerequisites being complied with, the court has no jurisdiction, and all the proceedings are nugatory, and confer no right on a party claiming under them, the court having no jurisdiction to order the sale of the land. This can be set up against any party claiming any benefit under the order of sale. (McCoy *v.* Crawford, 9 Tex., 353; Fitzhugh *v.* Custer, 4 Tex., 391.) The court in this case had no authority to order the sale of the land in controversy, not having acquired jurisdiction in the manner required by law of the proper parties and of the subject matter. No presumption can be indulged to sustain the decree of the court ordering the sale of the land against the plain requirements of the statute. Such presumption can only be indulged in the absence of proof, and not against proof and against the recitals in the record. (Withers *v.* Patterson, 27 Tex., 491.) The jurisdiction of County Courts to decree a sale of land, to satisfy a lien by mortgage or otherwise, being a court of limited power, should be shown; but when the want of power is apparent, the effect would be the same, whatever might be the character of the jurisdiction. (Horan *v.* Wahrenberger, 9 Tex., 319; Elliott *v.* Piersol, 1 Peters, 328, 340.)

*Aycock* and *Hamman,* also for appellees. It is well settled that the proceedings and pleadings in our Probate Court must in themselves be sufficient to inform the opposite party of their nature and objects, and to enable a person of ordinary understanding to comprehend the subject matter of controversy with reasonable certainty; or, as the doctrine is technically expressed, they must be good on general demurrer. (Runnels *v.* Kownslar, 27 Tex., 532; Danzey *v.* Swinney, 7 Tex., 623; Francis *v.* Williams, 14 Tex., 163; Langley *v.* Harris, 23 Tex., 568, 569.)

The rule is not new. It is founded on a general principle of almost universal application.

The Supreme Court of the United States and the State Courts have applied it to the petition or plaint by which the jurisdiction over the subject matter is invoked in Probate Courts, and to their proceedings generally. (United States *v.* Arredondo, 6 Peters, 709; Grignon's Lessee *v.* Astor, 2 How., 338, 340; Morse *v.* Goold, 11 N. Y., 281; Jackson *v.* Babcock, 16 N. Y., 246; Gibson *v.* Bell, 30 Ill., 172; Johnson *v.* Johnson, 30 Ill., 215; Goudy *v.* Hall, 30 Ill., 109; Whiting *v.* Porter, 33 Ill., 445; Reddick *v.* The Bank, 27 Ill., 147; Mason *v.* Messenger, 17 Iowa, 268; Alabama Conference *v.* Price, 42 Ala., 49; Smiley *v.* Sampson, 1 Nebraska, 56, 70.)

And in the following cases it is expressly declared that the jurisdictional facts must appear on the face of probate proceedings, (in the petition,) and that the naked decree does not import verity. (Thompson *v.* Tolmie, 2 Peters, 163, 164, 167, 169; Grignon's Lessee *v.* Astor, 2 How., 340, 341; Kempe's Lessee *v.* Kennedy, 5 Cranch, 185; Burdett *v.* Silsbee, 15 Tex., 618; Finch *v.* Edmonson, 9 Tex., 513, 514; Jones *v.* Taylor, 7 Tex., 243, 244; Miller *v.* Miller, 10 Tex., 333.)

The record shows that the Probate Court did not acquire jurisdiction of the subject matter, because there never was a petition presented to the court by which its power was invoked over any property, and because there is no land suffi-

ciently described in the pretended order to inform any one, with reasonable certainty, of the property intended to be exposed to sale as the statute (Paschal's Dig., arts. 1314, 1319) requires.

If the pretended decree affirming the sale to H. W. Davis is of any force, "it is a final judgment, and the only further proceedings which the Probate Court could take in respect to the judgment was 'to carry it into effect." The attempt of the court to set it aside, and to direct a conveyance to be made to J. A. Davis, was a nullity, and he acquired no title by the administrator's deed.

Gould, Associate Justice.—The leading objections to the order of sale to foreclose a vendor's lien are, that it was made on the application of the administrator, and that the land ordered to be sold is not sufficiently described.

In regard to the first point, it may be premised that the order recites that it was made on the petition of the administrator, and although the petition did not appear in the record, it must be assumed that there was a petition. (Alexander *v*. Maverick, 18 Tex., 192; Withers *v*. Patterson, 27 Tex, 491.)

Under the probate law of 1848, the power of the Probate Court to order a sale of lands for the payment of debts on the application of the administrator, and, indeed, the duty of the administrator to apply for such an order, are too plain to be doubted. (Paschal's Dig., art. 1314.) It would, perhaps, suffice to maintain the validity of the order of sale in the case, that it was made on the petition of the administrator and for the purpose of paying a debt of the estate. But we are of opinion that it was competent and right for the administrator, in applying for the sale of lands, subject to a lien for a debt allowed and approved, to recognize that fact, and to ask for such an order as would authorize him to apply the proceeds of the sale to the discharge of the secured debt. The statute directed the administrator to pay such debts "out of the proceeds of the property, subject to such mortgage or lien," (Paschal's

Dig., art. 1339;) and it might well happen that the interest of the estate would require him to take the initiative in procuring the sale of incumbered lands, without waiting for the application of the second creditor. (Paschal's Dig., art. 1319.)

This construction of the statute is in accord with the reasoning and spirit of the decisions of this court on questions of a similar character arising under the probate law of 1843. (Alexander v. Maverick, 18 Tex., 192; Allen v. Clark, 21 Tex., 404.)

The objection, that the order of sale does not sufficiently describe the land to be sold, might be disposed of by a reference to former decisions. In the case of Wells v. Polk, 36 Tex., 121, which arose under the same statute, an order of sale was held valid when there was no attempt to identify the land to be sold in either the application or the order. (See also Wells v. Mills, 22 Tex., 302.)

The provisions of the statute requiring the order to describe the property to be sold, like the provision requiring the application of the administrator to be accompanied by an estimate of expenses, claims, and to be verified by affidavit, must be regarded as directory. (Kleinecke v. Woodward, 42 Tex., 310; Paschal's Dig., arts. 1314, 1321.)

In this case, however, if the different orders which preceded and authorized the sale be taken together, it does not appear that the description is insufficient to enable a party to identify the land. The sale was to be of three hundred and twenty acres "bought from J. A. Davis," or so much thereof as would satisfy the vendor's lien. The inventory of the estate was in evidence, and contained but one tract of land, described simply as "372 acres." The description in the orders is not such as should have been given, but it cannot be said to give no data for identification.

As to the order allowing the substitution of the name of J. A. Davis as the real purchaser, after a confirmation of the sale to H. W. Davis, we do not regard it as beyond the power

of the court, if, as must be presumed, it was made with the assent of H. W. Davis. Even without such an order, it would have been competent for H. W. Davis, his bid having been paid, to have the deed made to such person as he might direct. The purchase-money appears to have been paid, under the authority of the court, by a credit on the claim of J. A. Davis, and it is a fair presumption that H. W. Davis directed or assented to the substitution.

Without discussing other minor objections taken, we hold that, though the orders of the Probate Court are open to criticism and are quite defective, enough appears to show that the court had jurisdiction to make them, and that they are not on their face nullities.

For the error in excluding these orders, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.