W. K. McCARDELL ET AL. v. J. V. LEA ET AL.

No. 3187.  Decided November 30, 1921.

(235 S. W., 518.)

1.—Judicial Sale—Intendments in Favor.

Courts should not scrutinize the proceedings of judicial sales with a view to defeat them.  On the contrary, every reasonable intendment will be made in their favor.  (P. 386).

2.—Same—Description of Land Sold.

The description in probate orders for the sale and conveyance of land by an administrator is sufficiently certain where it may, by extraneous evidence, be so applied to the land as to reasonably identify it.  (Pp. 386, 387).

3.—Same—Intention Gathered from Record.

In construing probate orders, controlling effect should be given to the intention of the court as it may be reasonably gathered from the entire record of the administration.  (P. 387).

4.—Construction Supporting Sale Preferred.

The established rule of construction for all written instruments is followed in giving the language of an order of sale that interpretation which makes it operative, instead of that which would invalidate it.  (P. 387).

5.—Description—Mistaken Call.

A call for a tract of land out of a large survey which would locate it East instead of West of the Trinity River, being inconsistent with its boundaries and obviously a mistaken call, may be disregarded in determining its location.  (P. 387).

6.—Description—Evidence from Entire Record.

Where sale of land belonging to an estate was for the purpose of partition among the heirs, and contemplating disposition of all the interests remaining in the estate, the orders of partition, report of the commissioners representing specific partition inadvisable, the order of sale for partition,

and the report of sale in numbered subdivisions, with extrinsic evidence to identify the location of the subdivision in controversy, are here considered and held to amount to sufficient description to support the sale.   (Pp. 383-387).

Error to the Court of Civil Appeals for the Ninth District, in an appeal from Liberty County.

McCardell and others brought suit for land claimed by them as heirs of Davis, against Lea and others claiming the same under a sale by the administrator of Davis' estate.  Plaintiffs were denied a recovery and defendants awarded one on their cross action for the land in controversy.  Plaintiffs appealed; and on affirmance (200 S. W., 562) obtained writ of error.

*C. F. Stevens, Kittrell & Kittrell,* and *C. W. Nugent,* for plaintiffs in error.

Where it is manifest that the administrator believed that sales already made had consumed all the land except 2739 acres, and had so repeatedly reported under oath, and where the maps in evidence showed all the then known or believed-to-be area of two leagues were occupied by tracts previously sold, except room for 684¾ acres in the east end, and for three 684¾-tracts in the west end, and there was no description in any report or order except "2739 acres west of Trinity River," etc., and the defendant in error could produce no deed, and none had ever been recorded, and there was neither an order of sale, or report of sale, or confirmation of sale describing any land except "2739 acres Martinez league, Liberty Co. west of Trinity River," it was error to admit the report of sale, when resort to the probate record would not supply the description, and error to allow the defendant in error to prove by his own parol testimony, after the lapse of forty years, that he bought not only a specific 684¾ acres, and give boundaries, but bought in excess of that quantity to the extent of 1400 acres—distant, as the maps in evidence show, two miles or more from the only part of the league remaining unsold or believed so to be, where his claimed 684¾ acres and two others of like dimensions could be located, and where the administrator did not know or believe there was any unsold land, and hence could not have sold it, and the Court of Civil Appeals erred in affirming such holding, and in doing so, held differently from other Courts of Civil Appeals and from the Supreme Court on the same question of law.  Ball v. Collins, 5 S. W., 622; Collins v. Ball, 82 Texas, 259; Harris v. Shafer, 86 Texas, 314; Wilkin v. Owens, 114 S. W., 104; Same Case, 102 Texas, 196; Greer v. Bringhurst, 56 S. W., 948; Wilkin v. Owens, 110 S. W., 552.

Where a plaintiff, either by direct action or cross-action, alleges that he owns, and seeks to recover a part of a certain league of land, and sets up no claim to any part of another league, it is fundamental error for the court below to adjudge the plaintiff part of the

league to which he set up no claim, and the Court of Civil Appeals erred in affirming such judgment, first, because there was an absolute failure of the allegata and the probata to correspond, and, second, it matters not how much evidence there may have been concerning land in league Six (6), to which plaintiff set up no claim in his pleading, such evidence was of no effect in the absence of allegations to which it could refer, and upon which it could legally rest, as it is fundamental that "facts not alleged, though proved, can form no basis for judicial action." Robinson v. Moore, 20 S. W., 996; Gulf, etc. v. Vieno, 26 S. W., 230; Mims v. Mitchell, 1 Texas, 443; Hall v. Jackson, 3 Texas, 309; Guess v. Lubbock, 5 Texas, 538; Stephenson v. Bassett, 51 Texas, 545; Cooper v. Loughlin, 75 Texas, 527; Western Union Tel. Co. v. Bowen, 81 S. W., 27.

*E. B. Pickett Jr.*, for defendants in error.

Where land is sold by an administrator and the description given in the application for sale, the order of sale, the report of sale and the order confirming the sale, or in either of said documents, is meager and indefinite, such description may be aided by applying extraneous evidence to the description as given, and to so aid the description reference may be made to the entire record in such administration, and parol testimony as well may be received for the same purpose. Hermann v. Likens, 90 Texas, 449; MacManus v. Orkney, 91 Texas, 33; Kingston v. Pickins, 46 Texas, 101; Hurley v. Barnard, 48 Texas, 87; Pierson v. Sanger, 93 Texas, 163; Taffinder v. Merrell, 95 Texas, 100; Smith v. Crosby, 86 Texas, 15; Giddings v. Day, 84 Texas, 608; Kerlicks v. Keystone Land & C. Co., 21 S. W., 624; Perry v. Blakey, 23 S. W., 805; Cook v. Oliver, 83 Texas, 559; Cox v. Rust, 29 S. W., 808; Frazier v. Waco Building Asso., 61 S. W., 134; Murphy v. Williams, 56 S. W., 696; Freeman v. Brundage, 57 Texas, 253; Robertson v. Johnson, 57 Texas, 66.

The evidence was amply sufficient to sustain the judgment of the trial court against the appellants upon their action for the recovery of the land in controversy, and in favor of the appellee, J. V. Lea, upon his cross action in trespass to try title, for all of the land sued for by Lea in said cross action as well as by plaintiffs in their petition, and even though there be a substantial excess in the acreage adjudged to Lea by the judgment of the trial court, still the appellants in this action were not entitled to set aside the administrator's sale and recover this excess, for well settled is the rule in this State that if there be a mistake regarding the number of acres included in a conveyance, an action to set aside the conveyance and recover an excess afterwards discovered, is an equitable remedy and cannot be maintained by the plaintiffs in a formal action in trespass to try title under our statute, nor asserted by the defendant in such an action under the plea of not guilty, The vendor must by specific

suit demand the proper additional consideration for the excess, or in the alternative, if that payment is not made, for recovery of the excess by asking for commissioners to make proper partition. Cavin v. Hill, 83 Texas, 76; Watts v. Howard, 77 Texas, 73; Willoughby v. Long, 96 Texas, 199; O'Connell v. Duke, 29 Texas, 300; Ayres v. Duprey, 27 Texas, 604; Grosbeck v. Crow, 85 Texas, 200; Matthews v. Moses, 52 S. W., 114; Sanborn v. Bush, 91 S. W., 884; Fuller v. O'Neil, 69 Texas, 352; Smith v. Olivarri, 127 S. W., 239; Parker v. Beavers, 19 Texas, 407; Mann v. Falcom, 25 Texas, 277; Nye v. Gribble, 70 Texas, 462; Daughtrey v. Knolle, 44 Texas, 455; Stark v. Homuth, 45 S. W., 762; Barnes v. Lightfoot, 62 S. W., 565; McCreary v. Douglas, 24 S. W., 367; Bennett v. Latham, 45 S. W., 935.

Where the parties to a deed intended to buy and sell the land in gross without reference to quantity, or if the intention of the parties was to include in the deed all the land within given boundaries, and afterwards it is ascertained that the quantity is more than was estimated or regarded as in the tract when the deed was made, the fact that such excess exists is not ground for annulling the deed to the extent of allowing the vendor or his heirs to recover the excess. O'Connell v. Duke, 29 Texas, 300; Daughtrey v. Knolle, 44 Texas, 456; Jordan v. Young, 56 S. W., 764; Hunter v. Morse, 49 Texas, 219; Baker v. Light, 80 Texas, 629.

The testimony of J. V. Lea being admissible, it was for the trial court to pass upon the weight and worth of that testimony; and the trial court having accepted that testimony as helpful in proving what land was conveyed to Lea by the administrator and how that land was described in the deed made to him by the administrator, there was no departure from the practice immemorially established to accept parol testimony as sufficient to prove the existence and contents of a lost deed, after the proper predicate has been laid for the admission of such testimony, and it was only that course which the trial court followed when receiving and considering the testimony of J. V. Lea, along with the large amount of documentary evidence which served to assist in identifying and describing the land which in reality the administrator sold to J. V. Lea at the sale which occurred on October 5th, 1875, and for which a deed to Lea was thereafter executed by the administrator and delivererd to Lea. Parks v. Caudle, 58 Texas, 220; Blanton v. Ray, 66 Texas, 61; Bounds v. Little, 75 Texas, 321; Dohoney v. Womack, 19 S. W., 884; Daniels v. Creekmore, 27 S. W., 149; Sampson v. Edens, 38 S. W., 476.

Mr. Justice GREENWOOD delivered the opinion of the court.

Plaintiffs in error brought this suit against defendants in error for the recovery of an undivided 53/56 interest in a tract of some 1431 acres of land out of the J. D. Martinez leagues in Liberty

County, numbered six and nine. Defendants in error answered with a general denial and a plea of not guilty and filed a cross-action against plaintiffs in error for the recovery of the entire 1431 acres tract.

Trial without a jury resulted in a judgment that plaintiffs in error take nothing by their suit, and that defendants in error recover on their cross-action the title to, and possession of, the 1431 acres of land. On appeal to the Court of Civil Appeals, the trial court's judgment was affirmed. 200 S. W., 562.

James Davis died owning land in the J. D. Martinez leagues, some of it lying East and some of it lying West of the Trinity River, including that in controversy on leagues 6 and 9, both of which lie West of the River. Plaintiffs in error were heirs of James Davis, and as such heirs claimed the undivided interest for which they sued. Defendant in error J. V. Lea claimed the land recovered by him as purchaser at a sale made by the administrator of the estate of James Davis. The question presented by plaintiffs in error is: Was there such description of the land in the administration proceedings as to authorize the conveyance of the estate's title by the administrator?

The facts to be considered, in determining whether the probate court had empowered the administrator to sell and convey the land in controversy, may be briefly stated as follows:

James Davis at one time owned all of the Martinez leagues numbered 6 and 9. He conveyed two tracts, aggregating 960 acres, out of the leagues. Soon after his death, the heirs of James Davis conveyed 1280 acres out of said leagues in two tracts, by deeds reciting that it was the intention of James Davis to convey the tracts in his lifetime and that the grantees were equitably entitled thereto. Prior to July 9, 1875, the administrator of the estate of James Davis had conveyed six tracts out of the two leagues, aggregating 4028-½ acres. If each of the two leagues had in fact contained 4428 acres, there would have remained of same 2587-½ acres, which had not been conveyed by James Davis or his heirs or the administrator of his estate. The actual acreage belonging to the estate and subject to distribution between the heirs, on July 9, 1875, in the two leagues appears to have been not 2587-½ acres, but to have been 4177 acres, the excess in acreage being discovered many years subsequent to the probate proceedings hereinafter set out. The administrator and all parties interested in the estate believed that the unsold land belonging to the estate in the Martinez leagues numbered 6 and 9, on July 9, 1875, was 2739 acres.

On March 7, 1874, in the administration of James Davis' estate, the administrator reported to the probate court the lands undisposed of and subject to distribution between the heirs and distributees. Among such lands were "2145 acres, J. D. Martinez, East side of

River, Trinity in Liberty County, 'White Oak League;' 2739 acres, J. D. Martinez, West side of said river in Liberty County.''

On July 9, 1875, with all persons interested as heirs and distributees of the estate appearing and consenting, the probate court appointed commissioners to partition all the lands mentioned in the foregoing report between the heirs and distributees.

On July 9, 1875, the commissioners reported that the land ordered partitioned was of such character and so situated that no just division thereof among the heirs could be made without diminishing the value of the land, and, on the same day, the probate court confirmed the commissioner's report, and, with the consent of all the heirs and distributees, the court ordered the land sold by the administrator for cash on the first Tuesday in October next, within legal hours, at public outcry, to the highest bidder, before the court-house door at Cold Springs, and ordered the administrator to make due report of his actions. In the commissioner's report and in the order of sale, were included: "2145 acres, J. D. Martinez, East side Trinity River in Liberty County, 'White Oak League,'" and "2739 acres, J. D. Martinez, West side said river in Liberty County."

On November 1, 1875, the administrator reported to the probate court that in pursuance of the court's order he had sold, on the first Tuesday in October, within lawful hours, at public outcry, at the court-house door in Cold Springs, lands described by Lot numbers from 1 to 13, including:

Lot No. 2, 631 acres, Martinez grant east of the Trinity in Liberty County, J. V. Lea, for                                               63.10
Lot No. 3, 621 acres of the same to the same J. V. Lea, for     68.10
Lot No. 4, 618 acres of same to the same J. V. Lea, for         61.80
Lot No. 5, 269 acres, Martinez, E. of Trinity River in Liberty County to J. V. Lea, for                           ·                      29.59
Lot No. 6, 684-¾ acres same to the same for                     68.40
Lot No. 7, 684 acres, same to James Davis for                   61.62
Lot No. 8, 684-¾ acres, same to G. B. Byrd for·                 61.62
Lot No. 11, 684-¾ acres, Martinez, W. Trinity in Liberty County, to A. E. Searsey, for                                     .            68.47

On November 6, 1875, the probate court confirmed the sales, reported, by an order duly entered on its minutes, reciting that the administrator was reporting sales made in pursuance of an order of the court, and directing the administrator to make titles on compliance by the purchaser with the terms of the sales.

It was established by parol eveidence that at the sale the administrator had some kind of a sketch made by surveyors and a blackboard plat, which showed the unsold land belonging to the estate. The blackboard plat showed the unsold land on the Martinez leagues numbered six and nine, West of Trinity River, to be subdivided in

111 Tex.—25

to four lots, each calling for 684-¾ acres, and numbered respectively Lot No. 6, Lot No. 7, Lot No. 8, and Lot No. 11. Lot No. 11 was first sold to A. E. Searcy; Lot No. 8 was next sold to G. B. Byrd; Lot No. 7 was next sold to James Davis; and, Lot No. 6, was next sold to defendant in error J. V. Lea. After confirmation of the report of the sales and payment of bids, the administrator executed deeds to the purchasers to the respective tracts purchased by them, such deeds describing the boundaries of each lot in accordance with the blackboard plat. There is no substantial difference between the description of the 1431 acres of land in the administrator's deed to J. V. Lea, as its terms were proven by parol, and in the petition and judgment herein.

These proceedings disclose not an order for the sale of an undefined portion of a larger tract of land, but an order for the sale of the land not previously disposed of and still belonging to the estate of James Davis in the J. D. Martinez league six and nine, in Liberty County, West of the Trinity River, estimated at 2739 acres.

This conclusion is inevitable if we give effect to the manifest intent and purpose of the probate court to effect a partition between the heirs of all undisposed of land belonging to the estate, by means of a distribution of the proceeds of the sale thereof, or if we adopt the probate court's own interpretation of the order of sale in its decree confirming the sales by the administrator, not of a part but of all the undisposed of lands of the estate in these two leagues, wherein it is expressly recited that such sales had been made in pursuance of the court's previous order.

The order of sale was designed to enable the court to effect a final settlement and distribution of the estate. It ought not to be so construed as to defeat the court's design. Yet, that design must have failed of accomplishment through a sale which would have left undivided and unsold a portion of the estate's lands.

The sale ordered was for the benefit of the heirs who were entitled to all its proceeds. With the heirs appearing and assenting to the original order for partition, they and the court clearly meant for all undisposed of lands to be divided and not for a mere part thereof to be divided. Had the commissioners proceeded to divide all the estate's lands in the Martinez leagues 6 and 9, who could doubt that their action would have been warranted by the court's order? Yet, it is undeniable that whatever lands were first meant to be partitioned were later meant to be sold.

It should now be accepted as settled in this State: first, that "the policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor, so as to secure, if it can be done consistent with legal rules, the object they were intended to accomplish;" second, that the descrip-

tion in probate orders for the sale and conveyance of land by an administrator is sufficiently certain, where it may, by means of extraneous evidence, be so applied to the land as to reasonably identify it; and, third, that in construing probate orders controlling effect should be given to the intention of the court as it may be reasonably gathered from the entire record of the administration. Smith v. Crosby, 86 Texas, 19, 40 Am. St., 818, 23 S. W., 10; Hermann v. Likens, 90 Texas, 453, 39 S. W., 282; Taffinder v. Merrell, 95 Texas, 101, 93 Am. St., 814, 65 S. W., 177; Slaughter v. City of Dallas, 101 Texas, 317, 107 S. W., 48; Holman v. Houston Oil Co., 174 S. W., 891; McManus v. Orkney, 91 Texas, 31, 40 S. W., 715; Hurley v. Barnard, 48 Texas, 88.

We follow the established rule of construction for all written instruments in giving the language of the order of sale that interpretation which makes it operative instead of that which would invalidate it. Hancock v. Butler, 21 Texas, 806; Curdy v. Stafford, 88 Texas, 124, 30 S. W., 551.

Applying the language of the report of sales and of the order of confirmation to the lands of the estate, by means of extraneous evidence, we find that the administrator proceeded to sell, and that the court proceeded to confirm the sales of all lands belonging to the estate in the Martinez leagues, including the sale of the land in controversy to defendant in error, J. V. Lea; and, that the court proceeded further to adjudge that the sales were made in pursuance of the court's previous order.

The lands sold were described in the administration proceedings, subsequent to the order of sale, as lots bearing certain numbers, belonging to the estate in the J. D. Martinez survey. The parol evidence disclosed that before the sale the administrator had subdivided the estate's lands into lots, each lot having a given number and clearly defined boundaries, and that the land in controversy was designated as lot numbered six. The call, which would locate the lot East of the Trinity River, being inconsistent with the boundaries of Lot No. 6, and being the mistaken call, is to be ignored. Wilson v. Giraud, 231 S. W., 1078. We think, therefore, that the description in the report of sales and order of confirmation, when applied to the land, by the use of extraneous evidence, did identify the land with reasonable certainty. Morrison v. Dailey, 6 S. W., 427; Spencer v. Levy, 173 S. W., 557.

The record of the administration taken as a whole, aided by the competent parol evidence, clearly reveals the intention of the probate court to authorize the sale and the deed, as made by the administrator.

The correct judgments were rendered by the District Court and by the Court of Civil Appeals, and it is ordered that said judgments be affirmed.

*Affirmed.*