## HOUSE et al. v. HUMBLE OIL & REFINING CO. et al.

### No. 2955.

Court of Civil Appeals of Texas. Beaumont.

July 23, 1936.

Rehearing Denied Oct. 21, 1936.

Hill & Schneider, of Houston, for plaintiffs in error.

W. N. Foster and Pitts & Liles, all of Conroe, F. J. Winter, Robert S. Durno, J. D. Farish, J. C. Townes, Jr., and Vinson, Elkins, Sweeton & Weems, all of Houston, for defendants in error.

COMBS, Justice.

Plaintiffs in error were plaintiffs and the defendants in error were defendants in the trial court, and we will so designate the parties.

Plaintiffs filed this suit in the district court of Montgomery county, Tex., in the form of trespass to try title and for dam-

ages for oil produced and removed from a tract of 826 acres of land, a part of the Ransom House one-third league and labor. The land involved, known as the Madeley 826-acre tract, is in the Conroe oil field and is very valuable. By stipulation on the trial, the matter of accounting for the oil which has been produced and sold was held in abeyance pending determination of the issue of title.

Plaintiffs are part of the heirs of Ransom House, the original grantee, and assert title in that capacity. The defendants claim title by mesne conveyances through two deeds, one from Ransom House to George H. Roberts, dated October 4, 1856, purporting to convey 400 acres, and the other from C. H. Beauchamp, administrator of the estate of W. R. House (Ransom House) to John M. White, dated January 30, 1868, purporting to convey two tracts, the second being the 826-acre tract here involved, less the 400 acres sold by W. R. House, deceased, to G. H. Roberts "and still undivided."

As we view the record, the sufficiency of the two deeds above mentioned to convey the land purported to be conveyed by them respectively are the controlling questions in the case. Defendants also pleaded title by limitation, which issue was decided in their favor by the trial court, but, since it is our view that defendants established record title, the limitation issues become immaterial.

It is plaintiffs' contention that the instrument by which Ransom House purported to convey 400 acres out of the larger tract to G. H. Roberts, although in form a deed, was in fact but an executory contract conferring upon Roberts the equitable right to make a selection; that the right was never exercised by Roberts and was lost by laches and limitation. The deed in question, omitting the certificate proving it up for record, is as follows:

"State of Texas
"Harris County

"Know all men by this public instrument of writing made and entered into by and between Ransom House, of the County of Harris, in the State of Texas, of the first part, and George H. Roberts, of the County of Harris, in the State of Texas, of the second part, witnesseth: That for and in consideration of the sum of One Thousand dollars in hand paid by the party of the second part to the party of the first part, the receipt of which is here-

by acknowledged and confessed, the said party of the first part by this act, has granted, bargained, sold, conveyed and released, and with having grant, bargain, sell, convey and release unto the said party of the second part, his heirs, assigns and legal representatives, the following described lands and premises lying and being situated in the County of Montgomery, in the State of Texas, towit:

"Four Hundred acres of land to be taken and surveyed off of a tract of land containing One-Third League and Labor granted to the said party of the first part by the President of the Republic of Texas by Patent No. 272, Vol. 4, dated 10th October 1845 (which patent for a more perfect identification is herewith made a part of this instrument), and this tract of land is to be surveyed off in such a manner that it shall commence on one of the boundary lines and form a square or an oblong, the surveying expense to be borne by the said party of the first part.

"The said party of the first part having heretofore sold and conveyed to C. B. Stewart one half of said third league and labor.

"Together with all and singular the rights, members, improvements, hereditaments and appurtenances to the same belonging or in any wise incident or appertaining, and the reversions and remainders, rents, issues and profits thereof. To have and to hold all and singular the hereditaments above mentioned and hereby granted and conveyed, with the appurtenances thereto belonging to the said party of the second part, his heirs and assigns, to the only proper use and behalf of the said party of the second part, his heirs and assigns forever. And the said party of the first part by this act binds himself, his executors and administrators to warrant and forever defend all and singular the said hereinbefore described premises unto the said party of the second part, his heirs and assigns against every person or persons whomsoever lawfully claiming or to claim the same or any part thereof.

"In witness of all of which the party of the first part hereunto sets his hand and seal (using scroll for seal) at Rose Hill this fourth day of October in the year of our Lord One Thousand and Fifty Six.

　　　　　　　　　"R. House [Seal]
"5 cents U. S. R.
"Witnesses Wm. Garrett
　　　　"William Taylor."

W. R., or Ransom, House died in 1861 and his estate was administered upon by C. H. Beauchamp, as administrator, in the probate court of Ellis county, Tex. It is admitted that the administration was regular and that the probate court of Ellis county had jurisdiction. On January 30, 1868, Beauchamp, as administrator, by authority of orders of the probate court authorizing him to sell all unsold lands in Montgomery county belonging to the estate of W. R. House, executed a' deed to John M. White conveying 1,676 acres out of the W. R. House two-thirds league and labor and 426 acres out of the one-third league, as follows:

"Know all men by these present, that whereas I, C. H. Beauchamp as Administrator of the Est. of W. R. House, dec'd., on the first Tuesday in Jany, A. D., 1868, according to the Requirements of the Law sell to John M. White, of the County of Dallas, State of Texas, he being the highest and best bidder, the following described tracts of land in Montgomery County, Texas, for the sum of One Thousand Dollars, viz:

"One Tract a part of the ⅔ League and labor of W. R. House, bounded and described as follows: Beginning at the N. E. corner of a 300-acre tract sold by said House to Sheppard out of the N. W. corner of said ⅔ League & Labor Survey; Thence S. 40 deg. E. 1535 var; Thence N. 75 deg. E. 2153 var to C. B. Stewarts N. E. Corner; Thence 15 deg. E. 1041 vas. to C. B. Stewart S. E. corner; thence N. 75 deg. E. 1644 vas. to corner of said ⅔ league & labor; Thence Nor. 15 deg. W. 2041 vas.; Thence S. 75 deg. W. 7276 vas, to the place of beginning, containing in all Sixteen Hundred & Seventy Six acres, 1676 acres.

"And one other tract in same County a part of the ⅓ League & Labor Survey of H. R.· & W. R. House, bounded & described as follows: Beginning on the East boundary line of said Survey at C. B. Stewarts N. W. corner; Thence N. 15 deg. W. 1015 varas to the N. E. & 3 N. F. of said Survey a Magnolia 10 in. dia. bears 165 deg. W. 17 vs.; Thence S. 75 deg. W. 30/31 varas, a stake from which a Pine 8 in. dia. bears N. 37 W. 2 varas; Thence S. 15 deg. E. 1468 varas corner of James Winters 640 acres; Thence N. 75 deg. E. 194 varas to C. B. Stewarts W. line; Thence N. 15 deg. W. 447 varas to C. B. Stewarts corner; Thence N. 75 deg. E. 1813 vas. to place of beginning, containing

in all 826 acres. Out of this last Survey there is to be survey in a body for G. H. Roberts of Harris County a four hundred acre tract sold by the said W. R. House dec'd to the said Roberts and still undivided leaving a bal. intended to be sold to the said White 426 acres, four hundred & twenty six acres. Said sale being made subject to the approved & confirmation of the Probate Court of Ellis County, and, whereas, at a term of said Court, began and held, on the last Monday of January A. D., 1868, the following proceedings were had then and there in reference to said sale towit:

"In the matter of the Estate of W. R. House, decd.

"And, the Court having examined into the manner in which such sale, was made and being satisfied the same was fairly made in conformity with the law it is hereby ordered by the Court that said sale be and the same is in all things hereby confirmed and that the account of sale be spread upon the minutes of the Court, and it is further ordered, and decreed by the Court that conveyances be made to the purchases of said lands by. C. H. Beauchamp, Administrator of said Estate of W. R. House, dec'd.

"Now, therefore, I, the said C. H. Beauchamp, Administrator of the said Estate by virtue of the authority as above given and in consideration of the aforesaid sum of One Thousand Dollars to me paid by the said John M. White, the receipt whereof is hereby acknowledged, do grant, bargain, & Sell and have granted, bargained & Sold and conveyed unto the said John M. White, by these presents, his heirs or assigns, all of said two tracts of land as above described, together with all and singular the rights, members and appurtenances to the same in any manner whatsoever belonging to have and to hold all the singular the said premises unto him, the said John M. White, his heirs and assigns forever in fee simple, saving and excepting said four hundred acres reserved to deed of G. H. Roberts.

"Witness my hand this the 30th day of Jany, 1868.

"C. H. Beauchamp, Admr. Est. of W. R. House, dec'd."

Plaintiffs make an attack upon the probate proceedings which we will discuss later, but we will state here that we think the administrator's deed was a valid conveyance.

Upon trial to the court, without a jury, the court entered judgment against the plaintiffs and in favor of the defendants, holding the conveyances valid and also holding that the defendants have limitation title to the land involved.

## Opinion.

As above indicated, plaintiffs' attack on the deed from Ransom House to G. H. Roberts is that the instrument conveyed to Roberts only the equitable right to select 400 acres of land "to be taken and surveyed" off of the larger tract "in such manner that it shall commence on one of the boundary lines in form a square or oblong"; that it conveyed no present interest at all, either to a specific and segregated tract or to an undivided interest; that, the contract being merely executory, no title would ripen in Roberts until the selection was made, and, there being no evidence that he ever made such selection, the House title was never divested by the instrument. Plaintiffs cite as supporting their contention Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Smith v. Hampton's Heirs, 13 Tex. 459; Watson v. Inman, 23 Tex. 531; Hunt v. Turner (Tex.Civ.App.) 88 S.W.(2d) 520.

■ We think it immaterial whether the deed from House to Roberts, standing alone, can be construed as conveying a present undivided interest of 400 acres, or whether it is susceptible to the construction that it conveyed to Roberts the right to select 400 acres out of the larger tract described. It is not questioned that the instrument was valid and that the consideration was paid. Clearly, if it did not convey an undivided 400 acres, it did, at any rate, convey to Roberts the right to select 400 acres in the manner specified. And so the matter stood when in 1868 Beauchamp, administrator of the House estate, made the conveyance to John M. White. In that deed Beauchamp described the 826-acre tract out of the House one-third league and recited that out of said tract "there is to be surveyed in a body for G. H. Roberts of Harris County a 400 acre tract sold by said W. R. House, deceased, to said Roberts *and still undivided* (italics ours) leaving a balance intended to be sold to the said White 426 acres. * * *" That recital in the administrator's deed removed any uncertainty as to the nature of the interest conveyed by the deed from House to Roberts by recognizing it as an undivided interest. Such construction

placed upon the transaction by the administrator of the House estate only a few years after the original transaction and at a time when the facts must have been known to him may be properly considered in determining the true intent of the parties to the original instrument. So we think the deed from Ransom House to G. H. Roberts did operate as a conveyance of title to an undivided 400 acres in the 826-acre tract, the right conferred upon Roberts to make selection of a definite and segregated tract being an additional right which might be waived. Gray v. Producers' Oil Co. (Tex.Civ.App.) 227 S.W. 240 (writ refused); Dohoney v. Womack, 1 Tex.Civ.App. 354, 19 S.W. 883, 20 S.W. 950, 951 (writ refused); Ramirez v. Garza (Tex.Civ.App.) 269 S.W. 1102. The above cases, we think, are in no way overruled or modified by the opinion of our Supreme Court in the recent case of Smith v. Sorelle, 87 S.W.(2d) 703. In Smith v. Sorelle, supra, the instrument purported to be a conveyance of a royalty interest in "100 acres out of Blocks 8 and 9 of the subdivision of the Jose Maria Pineda" survey. Blocks 8 and 9 contained more than 100 acres, and the instrument did not describe any land at all nor did it contain any descriptive data from which the land sought to be affected could be identified.

■ But we think the plaintiffs' contention is untenable for an additional reason. Even if it should be held that the deed from Ransom House to Roberts did not convey any present interest, but only the equitable right to select and have conveyed to him a specific tract out of a larger tract, as contended by the plaintiffs, still it seems to us they are in no better position. Our conclusion is based upon the following facts: The deed from Beauchamp, administrator of the House estate, to John M. White, above mentioned, conveyed to White all of the interest in the 826-acre tract at that time remaining in the W. R. House estate. Said conveyance described the larger tract and had the effect of making such conveyance subject only to the prior conveyance of the 400 acres out of it by House to Roberts. So that whatever right and title remained in W. R. House and the W. R. House estate after the execution of the deed from House to Roberts passed to White by virtue of the administrator's deed. On April 8, 1871, White conveyed the land which he had acquired under the administration deed to C. H.

Beauchamp, and on July 20, 1871, Beauchamp conveyed it to G. H. Roberts. Thus the title conveyed by House to Roberts and the title to all of the 826-acre tract which was not conveyed by it became merged in G. H. Roberts. The two deeds having divested all of the House title and all of the title having passed by one or both of the conveyances to G. H. Roberts, it is, of course, immaterial that Roberts did not make selection of the definite tract. There certainly was no occasion for him to do so after he became the owner of the whole. His right to make the selection had not lapsed by laches, as in the case of Dull v. Blum, supra, but the existence of the right having been specifically recognized by the administrator in 1868 and the subsequent claim of Roberts under the conveyances, coupled with the long nonclaim thereafter by the House heirs, shows that such claim was an active claim.

Plaintiffs attack the administrator's deed from Beauchamp to Roberts, first, on the ground that it does not sufficiently describe 426 acres which it purports to convey. This contention is based in part on the plaintiffs' contention that the prior deed of House to Roberts did not convey the 400 acres, and therefore the administrator's deed which attempts to except that tract out renders its description void because the land attempted to be excepted cannot be identified. This contention goes out of the case because, as we have already held, the deed of Ransom House to Roberts conveyed an undivided 400 acres and the administrator's deed recognized it as an undivided interest and purports to convey the balance of the 826 acre tract, which larger tract is described by metes and bounds.

But, if it should be held that the description in the administrator's deed does not sufficiently describe the 826-acre tract and the 426 acres which was sought to be conveyed out of it, still the entire administration proceedings may be looked to to determine the sufficiency of the sale and to identify and locate the land intended to be conveyed. Texas Jurisprudence, vol. 14, § 471, p. 251; Davis v. Touchstone, 45 Tex. 490. It is shown that Ransom House was entitled to one league and labor of land as the head of a family, and that he located it in two tracts, one designated as the Ransom House two-thirds league and the other as the Ransom House one-third league and labor, of which the

826-acre tract here involved is a part, both located in Montgomery county. Recent surveys show that there is an excess of acreage in the two tracts, but in the probate proceedings they were dealt with as containing the acreage called for in their patents, and the probate court was justified in assuming that they contained the correct acreage, 4605 acres. McCardell v. Lea, 111 Tex. 380, 235 S.W. 518. On that basis, and deducting conveyances which it is shown that Ransom House had previously made, including the 400 acres conveyed by him to G. H. Roberts, the Ransom House estate had left in the two surveys at the time of the administration 2,102 acres, which was all the land the estate owned in Montgomery county. That is the exact acreage purported to be conveyed by the administrator's deed to John M. White, the first tract described being 1,676 acres out of the two-thirds league and the second being 426 acres out of the one-third league and labor here involved.

As hereinabove mentioned, appellants attack the sufficiency of the probate proceedings to convey all of the unsold lands in Montgomery county belonging to the House estate, including the 826 acres involved here, which was deraigned under the administrator's deed.

The first application made by the administrator to sell the land recited: "Now comes Chas. H. Beauchamp, admr. of W. R. House, decd., and makes this application for an order to sell so much of the property of the decedent as will be sufficient to pay the debt of the estate and the expenses of administrator." He represented in the application that the estate consists of land alone which lies partly in Ellis and partly in other counties and that he believes it will be necessary to sell all to raise enough for the purposes aforesaid. Based on the application the court ordered "the 'sale of all of the land belonging to the estate, or so much thereof as may be necessary to pay the indebtedness * * * on the 5th day of March, 1867." The sale did not take place on the 5th day of March, 1867, but was extended by order of the court to the 7th day of May, 1867. On June 1, 1867, the administrator filed a report of sale in which he reported "he proceeded to sell * * * the following lands belonging to the estate of W. R. House, deceased, to-wit: 2,000 acres in Montgomery County, W. R. House, headright, to C. B. Stewart at $1,800.00." Prior to August 27, 1867, Beauchamp, as

administrator, reported to the court that, on account of the failure of a part of the parties to the sales of the land on the first Tuesday in May to comply with the terms of said sale, "it becomes necessary to re-sell such lands," and he asked for "an order for the sale of such lands" on the first Tuesday in October, 1867. On said application the court entered an order to sell all the land that falls back to said estate on account of the "failure of purchasers at the sale on May last to comply with the terms of said sale." Thereafter the administrator reported that a sale had not been made on the day above set and asked for "an order to sell all of the unsold land of said estate on the first Tuesday in January, 1868." On said application the court ordered the administrator to sell "all the land of said estate heretofore ordered to be sold." In the report of the sale the administrator referred to the sale of the Montgomery county lands as follows: "Acting under the order of the court to sell the unsold land belonging to the estate of W. R. House, deceased, proceeded on the 1st Tuesday of January, 1868, * * * to sell said unsold land belonging to said estate * * * when John White became the purchaser of two thousand acres of land situated in Montgomery County, Texas, it being a part of the W. R. House headright, at 50 cents per acre." The report of the sale contained the following:

"The State of Texas
"County of Ellis

"In the Probate Court, January Term, A. D. 1868

"To the Honorable Arvin Wright, County Judge and Judge of the Probate Court in and for said County * * *

"The undersigned begs leave to report that in pursuance of an order of this Honorable Court obtained at the November term thereof 1867 to sell the unsold lands belonging to the estate of W. R. House, deceased, proceeded on the first Tuesday of January 1868, between the hours prescribed by law, to sell the said unsold lands belonging to said estate, at public outcry to the highest bidder; when John White became the purchaser of two thousand acres of land, situated in Montgomery County, Texas, it being a part of the W. R. House headright, at fifty cents per acre. * * *

"C. H. Beauchamp, Admr."

The account filed in the probate court of Ellis county and sworn to by the administrator on the 6th day of April, 1878, contains, among others, the following recital: "Proceeds of 2,000 acres of land in Montgomery County, as per sale bill January 27, A. D. 1868 * * * $1,000.00." The final account and settlement filed by the administrator dated the 19th day of February, 1878, contains the following recital: "That the property of the estate is exhausted and all claims collected that can be, and administrator asks that this be taken as a restatement of his final account which was filed in 1871, and which has been published, and he asks that he be discharged and the administration closed."

■ We think the probate proceedings were clearly sufficient to convey the title under the administrator's deed to White. The rules applicable to the construction of an administrator's proceedings, with regard to what was intended to be conveyed by it, are the same as regards private sales. Hermann v. Likens, 90 Tex. 448, 39 S.W. 282. And, while it is true that the statute requires that the instruments relating to the proceedings for the sale of the decedent's property shall contain a description of the property, still a general order of the probate court to sell "any lands," or "so much lands as are necessary to pay the debts of the estate," has been held sufficient. Texas Jurisprudence, vol. 14, § 471, p. 251; Wells v. Polk, 36 Tex. 120; Davis v. Touchstone, 45 Tex. 490; Perry v. Blakey, 5 Tex.Civ.App. 331, 23 S.W. 804; White v. Luning, 93 U.S. 514, 23 L.Ed. 938; McGrady. et al. v. Clary (Tex.Civ.App.) 247 S.W. 1099, 1102 (writ refused).

■ In this case we think it clear that the probate court of Ellis county empowered the administrator, Beauchamp, to sell, and that Beauchamp did sell to John M. White, all of the land which the estate of Ransom House then owned in Montgomery county, including the land involved in this suit. It is apparent that for more than 60 years no one claiming under Ransom House, so far as this record shows, asserted any claim contrary to the title herein asserted by the defendants. The probate proceedings and orders under which the conveyance was made were certainly not void on the face of this record, and we think the plaintiffs are in no position to attack them collaterally in this suit, and in that manner seek to disturb and to divest the rights which have for so many years been asserted openly by acts of own-

ership and payment of taxes. Courts are not required to scrutinize the proceedings of a judicial sale with a view of defeating it. On the contrary, every reasonable intendment will be indulged in their favor so as to secure, if it can be done consistently with legal rules, the object they were intended to accomplish. White v. Luning, 93 U.S. 514, 23 L.Ed. 938. In this case where it is shown that the heirs of the decedent have, by their silence, acquiesced for nearly 70 years in the conveyance made by virtue of the proceedings which they now attack, the strongest possible reason exists for applying such rule. Among the many cases which we think fully sustain our holding we cite the following: McCardell v. Lea, 111 Tex. 380, 235 S.W. 518; Wells v. Polk, 36 Tex. 120; Kleinecke v. Woodward, 42 Tex. 311; Hurley v. Barnard, 48 Tex. 83; Perry v. Blakey, 5 Tex.Civ.App. 331, 23 S.W. 804; Hermann v. Likens, 90 Tex. 448, 39 S.W. 282.

The original opinion filed in this case on July 10, 1936, wherein the judgment of the trial court was affirmed, has been withdrawn and rewritten, so as to incorporate herein certain additional facts requested by the appellants in connection with their motion for rehearing. The motion for rehearing against our judgment of affirmance is in all things overruled.