L. L. WILLIAMS et al., Appellants,

v.

KIRBY LUMBER CORPORATION, Appellee.

No. 6515.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 1, 1962.

Rehearing Denied March 7, 1962.

James F. Parker, Beaumont, Andrews, Kurth, Campbell & Jones, Houston, for appellants.

Fountain, Cox & Gaines, Williams, Lee & Lee, Houston, for appellee.

McNEILL, Justice.

This is an action of trespass to try title instituted by Kirby Lumber Corporation, appellee, herein called plaintiff, against L. L. Williams and Alamo Lumber Company, appellants, herein called defendants, whereby Kirby sued for the title to and posses-sion of substantially 500 acres of land in the R. A. Irion League in Polk, Liberty and Hardin Counties and out of a tract of 2214 acres of said league set aside to A. P. Waterfield by partition deed dated December 2, 1878. The 500 acres sued for was described, insofar as necessary to under-stand the questions involved, in four more or less similar alternative ways as a seg-regated tract the south and east lines of which lie in the south and east lines of the league. A boundary dispute was also alleged which will be later set forth herein.

Defendants pleaded the general denial, plea of not guilty and as to plaintiff Kirby's claim of title especially urged the provi-sions of the Statute of Frauds, Art. 3995 of this state, as a defense against any as-serted validity on the part of Kirby Lumber Corporation as to instruments under which it deraigned title.

The case was tried before the court with-out a jury and at the conclusion of the trial, judgment was rendered sustaining plain-tiff's claim of title. Findings of fact were filed by the trial court.

It was stipulated that on June 9, 1877 A. P. Waterfield owned an undivided one-half interest in the R. A. Irion League; and that by partition deed dated December 2, 1878 a specific 2,214 acre tract in said league was set aside to him.

Thereafter Waterfield executed three deeds: (1) to B. G. Ezell, Trustee, dated September 27, 1880 and conveyed:

"1,000 acres in quality and value out of my 2,214 acre tract, which said 2,-214 acres is bounded as follows * *";

(2) to W. J. Cannon dated January 4, 1881, the granting clause of which reads:

"For and in consideration of the sum of $500.00 in hand paid, receipt where-of is hereby acknowledged, I A. P. Waterfield, of the County of Oliran and State of Tennessee, have this day bargained, sold and conveyed to W. J. Cannon of the County of Carroll, and the state aforesaid, 500 acres of land,

it being a part of the headright league of land granted to R. A. Irion, situated in the County of Liberty, Polk and Hardin, about 32 miles north of the Town of Liberty, 20 miles S. E. from the Town of Livingston, and about 30 miles N. W. from the Town of Hardin, in the State of Texas, and it being a part of 2,214 acres of said league which was conveyed by deed of partition to the said A. P. Waterfield, which 2,214 acres is bounded as follows, viz: * * *";

(3) to Thomas B. Tharpe dated March 2, 1882, which reads:

"* * * do hereby Transfer and Convey to Thomas B. Tharpe, of Cottage Grove, State of Tennessee, and County of Henry:

"714 acres of land, more or less, it being an undivided interest in the A. P. Waterfield Survey of 2,214 acres, which is a part of the headright league of land granted to R. A. Irion, situated in the County of Hardin, and Polk and Liberty, State of Texas, about 32 miles N. of the town of Liberty, and about 20 miles S. E. from the town of Livingston, and about 30 miles N. W. from the town of Hardin; * * *".

The owners of the 1,000 acre interest mentioned in (1) above are not involved in the suit, but the excerpt from the deed is quoted for the purpose of giving a clearer picture of what took place. It may be added that the owners of the 1000 acres, without complaint from others, in 1887 located their land off the west end of the Waterfield tract.

 Plaintiff claims title under the second above quoted deed, the one from Waterfield to Cannon. When it was offered in evidence defendants objected for the reason that it was void, and as being violative of Art. 3995. It was asserted that since the deed did not describe any tract of 500 acres to be taken out of the tract of 2,214 acres set aside to Waterfield by the partition deed that it was of no effect. This contention is defendants' second point. The point is without merit. As a sound premise for the solution of the question, the following language of Gaines, C. J., in Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551, and 552 is appropriate:

"The language of a deed is the language of the grantor, and, if there [by any] doubt as to its construction, it should be resolved against him. Again, if an instrument admit of two constructions, one of which would make it valid, and the other of which would make it void, the former must prevail."

There was no attempt in the deed to describe any 500 acres segregated area. This being so, the deed to the grantee for which he paid valuable consideration must fall unless it may be reasonably held that the grantor intended to convey an undivided interest of 500 acres in the tract of 2,214 acres. He must have intended to convey some land, amounting to 500 acres in the one-half league. We think it, therefore, reasonable to conclude and we do conclude that by this deed he conveyed an undivided 500 acre interest in the 2,214 acres. The rule applicable is well stated in Dohoney v. Womack, 1 Tex.Civ.App. 354, 20 S.W. 950:

"* * * When a deed conveys a certain number of acres, without describing the land conveyed, to be taken out of a larger tract described, the grantee becomes, by his deed, a tenant in common, having a fractional interest, represented by a fraction whose denominator is a number equal to the number of acres in the larger tract described, and whose numerator is a number equal to the number of acres conveyed. The grantee acquires such fractional interest in every acre of the larger tract."

This is still the law. Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 690, 117 A.L.R. 1066, 1070; House v. Humble Oil & Ref. Co., Tex.Civ.App., 97 S.W.2d 314, (W.R.).

The construction placed upon the above deed is further supported by following the

3rd deed quoted from above, the one from Waterfield to Tharpe conveying 714 acres of land, more or less, it being an *undivided* interest in the tract of 2,214 acres. This was the 3rd and last deed made by Waterfield, the first, it will be recalled, was for 1,000 acres, the second 500 acres, and the third 714 acres. The Tharpe deed having been made 13 months after the Cannon deed and calling for an "undivided interest" clearly indicates that Waterfield, in conveying the 1,000 acres and the 500 acres, intended each to be undivided interests. House v. Humble Oil & Ref. Co., supra, at p. 317; Heirs of Barrow v. Champion Paper & Fibre Co., Tex.Civ.App., 327 S.W. 2d 338, 343.

The next link in plaintiff's chain of title was a conveyance from W. J. Cannon to F. H. Kaupp and John J. Laumer dated June 8, 1903, wherein the land conveyed was described as follows:

> "All that certain Five Hundred (500) acres of land, it being a part of the Headright League of land granted to R. A. Irion, situated in the Counties of Liberty, Polk and Hardin, about thirty-two (32) miles north of the town of Liberty, twenty (20) miles southeast of the town of Livingston, and about thirty (30) miles northwest of the town of Hardin in the State of Texas and it being a part of two thousand two hundred and fourteen (2214) acres of said league which was conveyed by Deed of Partition to the said A. P. Waterfield which two thousand two hundred and fourteen (2214) acres are bounded as follows, to-wit: * * *"

Defendants' third point carries forward their objection to the offer of this deed upon the same ground that was made to the deed from Waterfield to Cannon. An examination of this deed indicates that it is substantially in the same language as the first deed, except the description starts with the phrase "all that certain" 500 acres of land. Defendants cite Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703, for the proposi-

tion that by the use of the phrase "all that certain" in referring to the 500 acres in the deed to Kaupp and Laumer, the intent of the grantor was to describe a specific separated tract, and since it did not, the deed is void. But coupled with this, attention should be called to the use of the words in the Sorelle case, "an undivided one-fourth interest" in minerals preceding the language "all that certain"—and the express use of such a phrase at one place without using a like one again would indicate that an undivided interest of 100 acres in the lots was not intended. This failure of the deed in that case to repeat the use of an undivided interest phrase in connection with and modifying the 100 acres mentioned is important. Too, in the Sorelle case the land was described as "a certain tract." This phrase could well import a segregated area. But we cannot believe that the mere use of the phrase "all that certain" in connection with acreage called for in the Cannon—Kaupp and Laumer deed means a segregated, isolated tract out of a larger tract more than that it means just what the phrase says "all that certain 500 acres of land." To what certain 500 acres was the grantor referring? To the 500 acre interest he owned in the 2,214 acre tract. The presumption is indulged, since it does no violence to the language of the deed, that Cannon intended to convey to them the land to which he had title. Jasper State Bank v. Goodrich, supra; Remuda Oil Co. v. Wilson, Tex.Civ.App., 264 S.W.2d 192; Massie v. Hutcheson, Tex. Civ.App., 296 S.W. 939(14). To revert to our premise quoted above, since the phrase "all that certain 500 acres of land" in the deed from Cannon to Kaupp and Laumer could as well be construed as "all that certain 500 acre interest" as that a specific, separate 500 acre tract was meant, we hold the deed valid as conveying the same interest that the deed into Cannon conveyed.

The 4th point assails the deed dated March 2, 1882 from A. P. Waterfield to Thomas B. Tharpe quoted from in the first part of this opinion, which is the

foundation of the Mannie Cooley McMannon title. (See 2nd par. below). The defendant Williams argues that this deed is void and of no effect, and that he only claims through the Waterfield heirs. Whether the deed is void is a close question. But we have decided to uphold it. Though it uses the expression 714 acres of land "more or less" and the quoted phrase is not definite, the deed undoubtedly undertook to convey an undivided interest in the 2,214 acres. After the description above quoted from in this deed is the language of the grantor: "I do covenant with the said Thomas B. Tharpe that I am lawfully seized of said land have a good right to convey it and the same is unencumbered." This language is clearly the language of ownership to which we may turn for help in identifying the land conveyed. Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551; Heirs of Barrow v. Champion Paper & Fibre Co., Tex.Civ.App., 327 S.W.2d 338. It must also be borne in mind that the language of the deed is that of the grantor and must be given that construction most favorable to the grantee. The use of the clause just quoted, "I am lawfully seized of said land have a good right to convey it" would include grantor's entire balance in said 2,214 acre tract. It follows that this construction should be placed upon it. Deeds 19 Tex.Jur. 2d Sec. 110, pp. 398, 399, Sec. 155, p. 473. A liberal construction in favor of the grantee should be given the description in a deed and a reasonable certainty is all that the law requires. Gates v. Asher, 154 Tex. 538, 280 S.W.2d 247. After the date of this deed, the State Comptroller's records show Waterfield stopped paying taxes on any land in the R. A. Irion League, and none was thereafter assessed to him, although he lived until 1928. This factor may be considered on the question before us. Heirs of Barrow v. Champion Paper & Fibre Co., Tex.Civ.App., 327 S.W. 2d 338, 343. There had been 1500 acres previously conveyed, and applying the above rules of construction, it is apparent that this is a residue deed and was intended to cover the balance of the undivided acreage owned by the grantor in the ½ league.

However, should we be mistaken in holding that either the deed from Cannon to Kaupp and Laumer or the deed from Waterfield to Tharpe is valid, yet because the defendants claim under and through the partition deed next to be mentioned, they cannot deny the Kaupp-Laumer nor Tharpe title.

The next conveyance in the chain of title relied upon by plaintiff was a partition deed between F. H. Kaupp and John J. Laumer, of one part, and Mrs. Mannie Cooley McMannon of the other part. As stated above, Mrs. McMannon held under the third conveyance (to Tharpe) made by Waterfield. The partition deed recites:

"* * * whereas F. H. Kaupp and John J. Laumer parties of the first part * * * and Mrs. Mannie Cooley McMannon, party of the second part * * * are the owners of undivided interests in a tract of 1214 acres of land, being a part of the R. A. Irion League * * *. Now, therefore, parties of the first part are the owners in fee simple, of an undivided 500 acres and party of the second part is the owner in fee simple of an undivided 714 acres of the hereinabove described tract of 1214 acres of land and both parties are desirous of having partition of said land so that each can own their respective parts in severalty free from the claims of each other * * *."

The instrument describes and sets aside a 500 acre tract off the East portion of the Waterfield subdivision to Kaupp and Laumer and a 714 acre tract to Mrs. McMannon immediately West of and adjoining the Kaupp and Laumer tract.

Subsequently, Mrs. McMannon conveyed her tract, as set aside to her in said partition deed, to I. L. Ream by deed dated June 28, 1910. Her tract of land is described therein as "beginning at the S.W. corner of

a tract of land sold to Kaupp and Laumer * * *."

Thereafter, by mesne conveyances, consisting of some nine (9) more deeds, this tract is conveyed into Alamo Lumber Company under whom defendant L. L. Williams holds. Each of the deeds down into Alamo Lumber Company contain substantially the same reference to the southwest corner of the Kaupp and Laumer tract as that quoted from above from Mrs. McMannon's deed.

■ Defendants say that since this partition deed was made between Kaupp and Laumer of the one part and Mrs. McMannon of the other, and since one or both had no title that the partition deed itself was void and can be of no effect. But this partition deed and each of the succeeding deeds were placed of record and possession was taken by the various grantees, and everyone, until lately, had dealt with the property concerned in accordance with such recitations and recognition of such title. Doty v. Barnard, 92 Tex. 104, 47 S.W. 712. The partition deed also reciting that each party was the owner of an interest in the land involved, those holding under them, including defendants, are bound thereby, although this link in the chain of title was not a necessary link. Waco Bridge Co. v. City of Waco, 85 Tex. 320, 20 S.W. 137, 140. It should be added that the defendant Alamo Lumber Company's title which arose in 1932, depends entirely upon the partition agreement.

In order to understand defendant L. L. Williams' position, who came into this title subsequently to his co-defendant, it is necessary to state that one C. I. Withers obtained a deed from the Alamo Lumber Company to the property in 1945, the lumber company reserving a mineral interest. Withers thereby came into the chain under the 1904 partition. Then Withers and another in 1958 conveyed to the defendant Williams, thereby placing him into the chain of title under the 1904 partition.

By deeds dated June 1, 1959, defendant Williams purchased from the heirs of A. P.

Waterfield all of their right, title and interest in the R. A. Irion League. It is at this point that Williams seeks to cut himself loose from the fact that he holds under the deed from Waterfield to Tharpe dated March 27, 1882, and the chain from there down to Mrs. Mannie Cooley McMannon, her partition agreement, the subsequent deeds down into Alamo and the recitations therein. He argues that some of these instruments are void and of no effect, and that he only claims through the Waterfield heirs. Even so, he is willing to accede to the fact that Adams v. Duncan, 147 Tex. 322, 215 S.W.2d 599 and Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626, are applicable and require him to recognize that Alamo Lumber Company is entitled to the mineral interest reserved in its deed to Withers. Thus, being required, he is in the position of one who, accepting a benefit under an instrument, must adopt the whole of it, conform with all its provisions and renounce every right inconsistent therewith. On this it is said in Doty v. Barnard, 92 Tex. 104. 47 S.W. 712 at p. 713:

"* * * The principle is recognized and established in this country almost precisely the same as in England, and rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that any one who claims an interest under an instrument is bound to give full effect to that instrument as far as he can. A person cannot accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in any other part; and this applies to deeds, wills, and all other instruments whatsoever."

Boundary Questions

In order to better understand these problems we insert here a map being plaintiff's Exhibit 35, which fairly represents the boundary problems involved. The four corners of the R. A. Irion League are represented by the letters, J, K, L, and F. On

R. A. IRION LEAGUE
Polk, Hardin, & Liberty
Counties, Texas
CVJ MARCH, 1981

December 2, 1878 the ownership of this league was as follows:

A. P. Waterfield, an undivided ½ interest,

W. H. & C. M. Williams, an undivided ⅕ interest,

The Heirs of Smith Fields, an undivided 515 acre tract,

W. H. Fields, an undivided 150 acre interest,

P. J. Irion, an undivided 665 acre interest.

On that date these persons executed a partition deed setting aside to the various parties the parts of the league which bears their names. It will be seen that W. H. and C. M. Williams took a tract in the Northeast section, W. H. Fields in the Northwest section, The Heirs of Smith Fields immediately south of the W. H. Fields and on the West side of the league, P. J. Irion's tract is the Southwest corner and A. P. Waterfield the balance. The first boundary question is which of the three lines, 1–2, 3–4, or 3–5 on this map is the dividing line between the Waterfield tract on the South and the Smith Fields and the W. H. and C. M. Williams tracts to the North. Plaintiff alleged that line 1–2 was the dividing line, or alternatively line 3–4 or alternatively line 3–5. If line 1–2 is the boundary, it contends that its 500 acres is the area enclosed by the symbols, C, D, F, 2. Otherwise, its North line is the line 3–4.

Defendants Alamo Lumber Company and L. L. Williams also pleaded that line 1–2 is the boundary. Defendant Williams claims not only the 500 acres claimed by plaintiff but also the tract of 714 acres lying between the letters, A, B, C, D. Defendant Alamo Lumber owns a mineral interest under the tract of 714 acres. There are numerous other parties defendant in this part of the litigation, and their pleadings allege generally that line 3–5 is the boundary and if not, then line 3–4 is the boundary. No evidence supports line 3–5 and it will not be further noticed. The trial court found and established the boundary as that marked by line 3–4, and all the parties, including plaintiff, except defendants Alamo Lumber Company and L. L. Williams, assert in this court that the line established by the trial court is the correct boundary.

■ The trial court's action in establishing this boundary is upheld. The original calls for the R. A. Irion league were 7,500 varas North and South and 3,333 varas East and West. It was shown without dispute that the four corners and lines of this league had for many years been the subject of uncertainty and confusion, and that this confusion and uncertainty existed until the boundaries of the league were fixed in judgment entered in Cause No. 6639, C. I. Withers, et al vs. Shell Oil Co., et al, dated April 17, 1959, recorded in Vol. 180, p. 634, Polk County Deed Records. And this judgment established an excess of 182 acres in the league, making the North and South lines 3,339.92 and 3,355.4 varas respectively. The East and West lines 7,785.3 and 7,768.69 varas respectively. The bearing trees and other description of the corners between the Williams and Smith Fields tracts on the North and the Waterfield tract on the South called for in the 1878 partition deed had long since disappeared. Three surveyors testified, John Hunter for plaintiff and Matt Racki and Norman Coats for defendants Alamo Lumber and Williams. John Hunter's testimony was, in substance, that he found the original corners called for in the partition deed marking the Northwest and Northeast corners of the Heirs of Smith Fields tract which would be the Southwest and Southeast corners, respectively, of the W. H. Fields tract. He made plaintiff's Exhibit No. 35 and testified that the distances called for in the partition deed between the several corners on the map were in parentheses, and the actual distances were the adjacent figures. He testified also that he found the original Northwest and Northeast corners of the P. J. Irion tract as well as its Southeast corner. Hunter testified that the line 3–4 is at the correct distance called for in the partition

deed (2,033 vrs.) South of the two identified North corners of the Smith Fields tract; it is practically the correct distance (4,877 vrs.) from the South corners of the P. J. Irion tract and is within 30 varas of the correct distances (1,656 vrs.) from the Northwest and Northeast corners of the P. J. Irion tract. Hunter further testified that he had found markings on line trees along line 3–4 for a distance of 1,600 varas going Westwardly and that he took a cut of rings on that line, and counting the rings, they counted back to 1878. He stated that timber had been cut to the West of the 1,600 varas distance and no markings were found there.

Mr. Racki stated defendant Williams instructed him to make a plat of the Northeast portion of the league, the W. H. and C. M. Williams tract; to go on the ground around it and see what he could find on the ground. This was the tract he was particularly interested in. This was for the purpose of determining the South boundary line of the 885 acre tract and the North line of the Waterfield tract. "I was to prepare a plat showing what was on the ground and what was being used as the lines." He started at the Northeast corner of the league and went to the Northwest corner of W. H. and C. M. Williams tract. He then went South along Williams tract to a yellow painted line and turned East and went to the East line of the league at a point on a gas mound. He then went North to place of beginning. He then went back and entered the South line of the Williams tract to a point on the West line of the league marked by an axle. He found a barbed wire fence on this line but it was down in places. He stated Mr. Williams instructed him to recognize this line (which defendant C. H. Jones, who presently owns the two Fields tracts, testified was his South line) and from the evidence on ground it appears to be a recognized line. He computed the acreage in the 885 acre tract and it contained 916 acres. He also ran out the line G–H which is the line G–F on his map, and ran the South

part of the league's East line South of Williams tract and went West to the Southeast corner of P. J. Irion on South line of the league. From a point in the South line of the league 762.3 varas East of said Irion corner he went North 4,825.4 varas, and near this point found a corner. From this point he went 1,947.4 varas West to the West line of the league. He found a 1″ iron pipe near this place just East of a road. Thence he turned North 275 varas to reach the axle location. From these measurements he stated he was satisfied that, acreage-wise, the line East from the axle corner (practically line 1–2 on plaintiff's Exhibit 35) was the South line of the W. H. and C. M. Williams 885 acre tract.

Mr. Racki testified his clients did not tell him to look for witness trees between the W. H. Fields and Smith Fields tracts, nor did he make any special effort to locate them; nor did his clients ask him to make any effort to survey these tracts out. He further stated that he was not asked to survey the West line of the P. J. Irion tract, nor the West line of the Waterfield tract, but only to extend the South line of the league over to what is reputed to be the South line of the P. J. Irion 665 acre tract. In effect, what he did was to make a location plat showing the physical lines and fences and other objects found on the ground. He did not go to the Northwest corner of the league, and he did not attempt to locate the North corners of the P. J. Irion 665 acre tract. When asked had he gone as the field notes called for to the common corners of the two Fields tracts and run the North-South lines on the Smith Fields tract from their Northern termini in a Southerly direction the proper distance, he stated those lines would have practically gone to the line 3–4 as located by Mr. Hunter. And when asked on other cross-examination, basing the distances given him and applying the scale on his map (Defendants' Ex. 8), he testified that when you come South from the Northwest corner of the Smith Fields tract a distance of 2,033 varas, as called for, you

would be at a point which is about 15 varas from the Northwest corner of the Waterfield tract, which for practical purposes would make the distances identical. He further admitted that if line 1–2 is the boundary, the distance South of the two Northern corners of the Smith Fields tract, called for in the partition deed, must be shortened more than 200 varas, and the distance North from the corners of the P. J. Irion tract and the South line of the league must be lengthened more than 200 varas. In the interest of brevity, the testimony of the surveyor Coats, who surveyed the defendant C. H. Jones tract in 1960, is not summarized, as it is cumulative, in pertinent part, of Mr. Racki's testimony.

It appears that only from the two North corners of the league will the partition distances terminate in line 1–2. Defendants Alamo Lumber and Williams urge that in the absence of definite bearing trees or other means of identifying the boundary line corners, that since the nearest established and recognized corners are the Northern corners of the league, the boundary should be established by measuring the proper distance from such corners, as held in Kirby Lumber Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382. And since there was 182 acres excess in the league, this excess would be more equitably awarded by sustaining this boundary. All the other parties assert that since the nearer corners, the Northwest and Northeast corners of the Smith Fields tract and the Northwest and Northeast corners of the P. J. Irion, were found and that their location is practically conceded to be true by all parties, the boundary should be controlled by going the called distances from these corners. The testimony of defendants' (Alamo Lumber and Williams) witness, C. H. Jones, implies that the bearing trees locating the Northwest and Northeast corners of the Smith Fields tract were there. (S.F. 124, 125). Mr. Racki testified he could not find them, but he admitted that he made no particular effort to locate them and no effort was made by him at all to ascertain the North-

west and Northeast corners of the P. J. Irion tract. In these circumstances, we think the corners just mentioned were located and practically conceded. In sustaining the location of the common corners of the two Fields tracts it is recognized that the distance called for in the old partition deed from the Smith Fields Northwest corner to the North line of the league, 592 varas will be 800 varas. But this, we think, is accounted for by the following circumstances: The partition deed located (1) the P. J. Irion Subdivision going North from the South line of the league; (2) the Waterfield from its South line, going North; (3) the Smith Fields northward from the line of the Waterfield; (4) the Williams also northward from the Waterfield; and only the W. H. Fields tract in the Northwest corner was located from the league's North line southward. The original 15 and 18-inch White Oaks called for in the grant at the league's Southeast corner were called for in the partition deed. At the Northeast and Northwest corners of the league the bearing trees in the grant were not called for in the partition deed. The fact that the partition deed called for the South league line, as fixed by its original bearing trees, but called for the league's North line, without calling for a single one of its four original bearing trees, creates a reasonable belief that in subdividing the league the surveyor began on its South line, located the P. J. Irion 665 acres, located the Waterfield 2,214 acres with its North line at 3–4, the correct called distance from the South line; from the Waterfield North line he ran north 2,033 varas and located the Smith Fields North and undisputed corners; from these undisputed corners he went North 592 varas as the deed says to where he felt the North line of the Irion league was.

Defendants Alamo Lumber and Williams contend that since their witness, C. H. Jones, the present owner of the two Fields tracts, recognized the Northerly line as the boundary that this would establish the line. However, since there is no

evidence of an agreement with the other adjoining property owners, or that the other parties at interest acquiesced therein, the witness's recognition can have no effect on the true line. Strayhorn v. Jones, 157 Tex. 136, 300 S.W.2d 623.

The other question of boundary involves the contention by defendants Alamo Lumber and Williams that as it appears that plaintiff, until very recently, claimed its 500 acre tract to be marked by the letters, G, H, N, M, and that all but 272 acres lies to the East of the established East line of the R. A. Irion League, that plaintiff's recovery should be limited to such acreage. For many years it was believed by all interested parties that there was no vacancy between the West line of the John Thompson Survey and the East line of the R. A. Irion League; in fact, former litigation in which this was thought to be the case between plaintiff and one Bailey reached this court and is reported in Bailey v. Kirby Lumber Co., Tex.Civ.App., 195 S.W. 221. There Bailey claimed part of the area represented by the letters, G, H, N, M, by virtue of limitation. Plaintiff defended that suit and was granted an instructed verdict to all of the area claimed by Bailey except two acres. However, later it was discovered there was a vacancy between the two surveys and plaintiff and L. L. Williams jointly made application to the State for a patent which was issued, giving plaintiff all of the vacancy except two acres which were awarded to Williams. It is now contended by the latter that since plaintiff had for many years claimed the area, G, H, N, M, as its tract, it is bound thereby. In answer to this, plaintiff argues that the description in the partition deed began at the Southeast corner of the league, and so did the deed into it, and that all deeds in its chain of title calls for this corner; that the parties dealing with the land made a mistake as to the location of the Southeast corner. And when it was lately discovered that the East line of the area claimed was not coincident with the East line of the league, the mistake should be corrected, the intent of the parties to the instruments involved honored and the calls in these various instruments complied with. The trial court found it was the intent of the parties to locate the Southeast corner of the 500 acres at the Southeast corner of the league, and since the surveyor or other person attempting to locate the Southeast corner of the league undoubtedly made an error plaintiff is not bound thereby. Cariker v. Davis, Tex.Civ.App., 172 S.W. 728; 9 Tex.Jur.2d, Boundaries, Sec. 12, p. 486.

The trial court having correctly disposed of the case, we affirm the judgment.

STEPHENSON, J., did not participate in the deliberations upon, nor decision in this case.